C.H.A. Design Export (H.K.) Ltd. v Miller (2021 NY Slip Op 00789)





C.H.A. Design Export (H.K.) Ltd. v Miller


2021 NY Slip Op 00789


Decided on February 09, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 09, 2021

Before: Kapnick, J.P., Mazzarelli, Moulton, Mendez, JJ. 


Index No. 152102/17 Appeal No. 12369 Case No. 2020-01992 

[*1]C.H.A. Design Export (H.K.) Ltd., Plaintiff-Respondent,
v
Alan Miller, Defendant-Appellant, John Does 1-10, et al., Defendants.


Sills Cummis & Gross, P.C., New York (Matthew P. Canini of counsel), for appellant.
Louis Fogel & Associates, New York (Louis Fogel of counsel), for respondent.



Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered December 3, 2019, which, to the extent appealed from, denied defendant-appellant Alan Miller's motion to dismiss plaintiff's tortious interference with contract claim, unanimously affirmed, with costs.
According to the First Amended Complaint, plaintiff C.H.A. Design Export (H.K.) Ltd. manufactures apparel and then sells it wholesale to distributers. Nonparty MM&R, Inc. (MMR) was one of those distributers and purchased apparel from plaintiff on credit. Defendant Alan Miller was an owner and/or officer of MMR, allegedly "controlled" MMR, and was plaintiff's primary contact. In 2011, MMR owed plaintiff an outstanding balance. Plaintiff alleges that Miller promised that MMR would make the payments to plaintiff, but needed more time to pay its debt. Ultimately, in 2015, a commercial factor that had a first priority lien on MMR's assets exercised its priority interest and took MMR's assets in a peaceful possession pursuant to UCC 9-609. At the time MMR went out of business, it had an outstanding principal balance of nearly $1.2 million due to plaintiff. Prior to the 2015 takeover, plaintiff alleges that Miller used MMR's revenue to pay down the debt to the commercial factor, for which Miller had provided a personal guaranty, rather than to make payments to plaintiff.
The court properly denied the motion to dismiss plaintiff's tortious interference claim against defendant Miller. A claim of tortious interference with contract requires that four elements be pleaded: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages" (Foster v Churchill, 87 NY2d 744, 749-750 [1996]; see Shear Enters., LLC v Cohen, 189 AD3d 423 [1st Dept 2020]; Hoag v Chancellor, Inc., 246 AD2d 224, 228 [1st Dept 1998]). "To establish a corporate officer's liability for inducing a breach of a contract between the corporation and a third party, the complaint must allege that the officers' acts were taken outside the scope of their employment or that they personally profited from their acts" (Hoag, 246 AD2d at 228 [internal quotation marks and ellipsis omitted]; see also Joan Hansen & Co. v Everlast World's Boxing Headquarters Corp., 296 AD2d 103, 109-110 [1st Dept 2002]). Here, plaintiff alleges that Miller used the company revenues to pay himself directly and/or indirectly and to pay for other benefits he personally received. Specifically, plaintiff alleges that Miller used the company revenues to pay down his own exposure, pursuant to a personal guarantee, to the commercial factor that provided financing to MMR, and that he did so in order to give himself time to secure new employment, which was with the company that subsequently purchased MMR's assets. Thus, plaintiff sufficiently alleges that separate and apart from acting in the best interests of MMR, Miller sought [*2]to personally profit by causing MMR not to pay plaintiff for the outstanding goods and services provided.
Defendant contends that a tortious interference claim will not stand where the alleged interference is merely "incidental to some other, lawful, purpose" (Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 281-282 [1978]). However, the Alvord decision was based on a summary judgment motion. Here, defendant has moved pursuant to CPLR 3211 (a)(7) for failure to state a claim, where the standard requires us to "[accept] the material allegations as true and [give] plaintiff the benefit of every reasonable inference" (Kralic v Hemsley, 294 AD2d 234, 235 [1st Dept 2002]). Defendant's argument that his payment to a secured creditor with a first lien constituted a "required lawful act" is better addressed after discovery has taken place, rather than at the pleading stage.
We have considered defendant's remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 9, 2021